***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Dollar with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The employee-employer relationship existed between the parties at all relevant times.
3. National Benefits America, Inc. was the carrier on the risk.
4. Plaintiff's average weekly wage was $299.13, which yields a weekly compensation rate of $199.43.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a forty-six year old female. She had sixteen years of prior experience in the furniture industry, but was permanently laid off after her prior employer was sold. Plaintiff had a history of pre-existing low back pain, for which she sought medical treatment from her family doctor at Springs Road Family Practice on January 29, 1994. At that time, she reported to Dr. Corder a two-week history of right lower quadrant pain radiating to her back and some urinary frequency.
2. On or about October 20, 2000, plaintiff sought treatment from her family doctor at Northeast Family Practice, at which time she requested refills of her Celebrex prescription for her low back pain. There is no evidence in the record to establish when the Celebrex was originally prescribed for her low back problems.
3. On April 24, 2001, plaintiff complained to Dan Cadwallader, PA-C, of Northeast Family Practice, of low back pain with difficulty sleeping and radiating to her left side down the leg to the knee. The physician's assistant noted she was visibly uncomfortable. Mr. Cadwallader prescribed Vicodin for pain, refilled the Celebrex and Norflex for spasm relief. X-rays were ordered.
4. At the hearing before the deputy commissioner, plaintiff denied having pre-existing low back pain for which she sought treatment and was prescribed Vicodin. She did admit being given Celebrex and Norflex prescriptions for her back pain. Despite her admission, she contended her family doctors never treated her back pain. Plaintiff's testimony is rejected as not credible.
5. By January 28, 2002, Mr. Cadwallader referred plaintiff to Carolina Orthopaedic Specialists for treatment, noting she had been seen by a chiropractor who also had made an orthopedic referral which she did not pursue. Plaintiff reported radicular pain and back pain which bothered her on a daily basis. Although Mr. Cadwallader noted plaintiff had been to a chiropractor for treatment, she denied this treatment at the hearing. Mr. Cadwallader also noted plaintiff's January 30, 2002 and February 15, 2002 appointments with Dr. Kirkland, Dr. Kirkland's February 4, 2002 referral to Dr. Geissele, and the March 13, 2002 appointment with Dr. Geissele. At the hearing, plaintiff denied reporting having daily pain or that she had seen a chiropractor for her pain. However, she did admit that she had been prescribed Ativan for treatment of her back pain. Plaintiff's testimony is rejected as not credible.
6. On behalf of Mr. Cadwallader, Dr. John Wilkinson referred plaintiff to see Dr. Timothy H. Kirkland at Carolina Orthopaedic Specialists. On February 4, 2002, Dr. Kirkland examined plaintiff and provided a record of the visit to Northeast Family Practice, in which he noted plaintiff was evaluated for L5-S1 spondylosis due to a history of chronic aching back for many years for which she used Celebrex for two years with no improvement. X-rays revealed spondylosis with possible pars defect and spondylolisthesis. Due to her chronic complaints of ongoing pain and intermittent numbness, Dr. Kirkland referred her to spine specialist Dr. Alfred Geissele.
7. On March 13, 2002, spine specialist Dr. Alfred E. Geissele evaluated plaintiff for low back pain and hip pain, as well as bilateral aching leg pain. Plaintiff reported low back symptoms for three to four years, which was worse over the past year, right side worse than left, radiating down to the feet with a stabbing numbing sensation. Imaging studies revealed severe L5-S1 degenerative disc disease with retrolisthesis of L5 on S1. Dr. Geissele diagnosed her with symptomatic degenerative lumbar disc disease with back and leg symptoms. He substituted 500 mg. of Lodine for the Celebrex and prescribed Ultracet for the nighttime pain. An MRI was ordered.
8. Plaintiff rescheduled her April 26, 2002 appointment with Dr. Geissele to June 7, 2002. However, she failed to keep the rescheduled appointment.
9. On May 30, 2002, plaintiff completed an Employee Questionnaire in the course of applying for work with defendant-employer. On the questionnaire, she indicated she had no history of past or present back pain. She also reviewed a job description and signed that she was able to perform the essential functions of the job without any accommodation. On June 3, 2002, plaintiff began working for defendant-employer, a manufacturer of upholstered furniture. She was promoted to quality control, where she inspected sofas and chairs before final shipping.
10. On November 19, 2002, plaintiff returned to Dr. Geissele's office, at which time physician's assistant Michael Blau saw her. Plaintiff reported worsening back pain and left leg pain. Mr. Blau reviewed the MRI report, which indicated left paracentral disc bulging at T12-L1, and diffuse bulging at L4-5 and L5-S1. Mr. Blau prescribed 500 mg. Naprosyn and 7.5 mg. Lortab. Physical therapy was ordered. She reported she had lost a previous job because she had work restrictions, and the employer did not want to comply with them.
11. Plaintiff testified that on or about December 3, 2002 at approximately 1:30 p.m., she strained her low back while pushing a sofa bed from the inspection area.
12. Plaintiff reported her injury on December 4, 2002 to supervisor Shirley Canipe, who filled out an investigation report and referred her to Janet Greer, FNP, for evaluation. Nurse Greer noted plaintiff's description of injury as pushing sofa, when she straightened up she felt a pain in her lower back, and has had pain since then. Plaintiff was released to light duty work with a ten pound lifting restriction and was given 800 mg. of ibuprofen. On December 11, 2002, plaintiff returned to Nurse Greer reporting little improvement. Nurse Greer prescribed additional ibuprofen and Skelaxin, as well as continuing work restrictions.
13. Plaintiff returned to Mr. Blau for a scheduled follow-up on December 12, 2002. She reported no symptom improvement with Naprosyn and Lortab. She indicated she was concerned because this happened at work, and she was afraid she would lose her job because of an injury and inability to work at her normal volume. Therefore, she had not reported an injury at work. Mr. Blau noted most of plaintiff's symptoms were from her degenerative disease at L5-S1. Additional Percocet and Prednisone were prescribed, and a follow-up MRI was ordered.
14. Defendants prepared an I.C. Form 19 Report of Employee's Injury on December 18, 2002.
15. Claims Representative Nanci Lewis took a recorded statement from plaintiff regarding the injury. She told Ms. Lewis that she was pushing a sofa bed and heard her back pop; and after it did not get better in a few days, she reported the injury to her supervisor. She reported her supervisor referred her to the plant nurse, who gave her ibuprofen and hydrocortisone cream. She stated after her back did not improve, she sought treatment with her family doctor and was referred to an orthopedist. Plaintiff said Dr. Dobley told her she had a bulging disc that was pinching a nerve. Plaintiff told Ms. Lewis that Dr. Geissele took her out of work from December 17, 2002.
16. On December 27, 2002, plaintiff returned to Dr. Geissele with complaints of left leg pain, numbness, coldness in her toes and a sensation of a goose egg in her tailbone. The December 17, 2002 MRI revealed a small T12-L1 disc protrusion and narrowing of the lateral recess at L4-5. A lumbar epidural injection was ordered.
17. Plaintiff returned to Dr. Geissele on January 15, 2003, after an epidural injection had provided relief of her left leg pain. Dr. Geissele found there was essentially no change between the March 20, 2002 MRI and that taken on December 17, 2002. A second epidural injection was ordered.
18. On February 12, 2003, the employer wrote to inform plaintiff that her sixty days of leave would be exhausted on February 16, 2003, and she would be terminated at that time if she did not return to work.
19. On February 18, 2003, Ms. Lewis filed an I.C. Form 61 Denial of Workers' Compensation Claim.
20. Plaintiff filed an I.C. Form 18 Notice of Accident to Employer on February 28, 2003.
21. In a March 19, 2003 letter, Dr. Geissele noted plaintiff reported a history of a work-related injury on December 3, 2002. Based upon plaintiff's changes in levels of symptoms, Dr. Geissele further wrote he concluded her December 2002 injury may be one of the causes of her worsening condition. This letter was written "To Whom It May Concern," and was copied to plaintiff's lawyer.
22. On March 28, 2003, plaintiff returned to Mr. Blau for a preoperative history and physical.
23. Dr. Geissele performed an L5-S1 posterolateral fusion, interbody fusion with instrumentation, insertion of intravertebral cages, and right iliac crest bone graft harvest on April 2, 2003.
24. Plaintiff returned to Dr. Geissele on April 17, 2003 for post-operative evaluation and removal of staples. Dr. Geissele noted she was doing well and would continue a walking program and smoking cessation. On May 15, 2003, plaintiff reported she had been out of pain medications for about two weeks. Dr. Geissele prescribed Darvocet and Soma.
25. By June 26, 2003, plaintiff reported increased low back pain and right hip pain. She admitted she had begun smoking again. Mr. Blau explained the nature of the surgery and recovery period in an effort to allay her concerns. On August 19, 2003, plaintiff returned to Mr. Blau, complaining of low back, bilateral hip and bilateral leg pain, as well as swollen feet. Imaging studies showed excellent placement of hardware, despite plaintiff's voiced complaints. Therefore, Mr. Blau ordered lumbar myelography and CT. He also prescribed Lorcet Plus and Soma for pain.
26. At the hearing, plaintiff denied telling Mr. Blau she lost her prior job because of her pain condition and work restrictions. She also denied telling Dr. Geissele she had not reported the December 3, 2002 alleged injury because she was afraid of losing her job. Plaintiff's testimony is rejected as not credible.
27. Dr. Geissele opined, and the undersigned finds as fact, it is not uncommon for a patient with severe degenerative disc disease to report a fluctuation of symptoms, such as those reported by plaintiff during her treatment.
28. At the hearing, plaintiff denied telling Mr. Blau or Dr. Geissele that she had not reported her alleged December 3, 2002 injury. She further testified that she reported the injury to her supervisor the day it happened. However, her testimony is rejected as not credible, as the Employee Accident Report clearly reflects plaintiff did not report anything to her employer until December 4, 2002.
29. Plaintiff testified she did not report back pain in the Employee Questionnaire with Nurse Greer because she did not have back trouble then. Her justification for misleading Nurse Greer and the employer is rejected as not credible. Plaintiff obviously had severe degenerative disc disease for which she had been seen by an orthopedist five months earlier, had submitted to an MRI two months earlier, and had seen a spine specialist two months prior to her date of hire. She had an appointment for one month prior to her hire date, which she had rescheduled for June of 2002. Any denial by plaintiff that she did not have "back trouble" at the time she was interviewed by Nurse Greer is at a minimum rejected as not credible.
30. Plaintiff denied telling Dr. Geissele that she had back problems for three to four years, which had gotten worse over the past year (before the March 2002 appointment). She testified her pain had been the same and that she had reported left side pain worse than right. She further denied telling Dr. Geissele her back and hip symptoms were constant and worse. This testimony is rejected as not credible.
31. Based upon the history of injury plaintiff related, Dr. Geissele opined plaintiff's symptoms were causally related to the alleged accident. However, Dr. Geissele's testimony was based on an inaccurate history of the onset of symptoms and the consequences of the alleged accident. Further, the treatment notes reflect that Dr. Geissele found no difference in plaintiff's March and December 2002 MRI reports.
32. The medical records clearly establish plaintiff's severe degenerative condition was not caused by any alleged incident at work. Furthermore, based upon the competent evidence in the record, there is no evidence to establish plaintiff sustained an injury at work as a result of an accident or a specific traumatic incident of the work assigned.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has failed to prove by competent evidence that she sustained a compensable injury or that she is entitled to benefits as a result of the alleged accident.
2. Where the exact nature and probable genesis of a particular injury involves complicated medical questions removed from the ordinary experience of the layperson, only a qualified expert witness can give an opinion as to the nature and cause of the injury. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). The Commission must first determine whether the proffered expert opinion is competent before the opinion can be weighed as evidence in the case. Expert opinion that rests on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v. Hickory Business Furniture,353 N.C. 277, 538 S.E.2d 912 (2000). In the instant case, Dr. Geissele's opinion testimony rests on the inaccurate history of onset as related by plaintiff. Therefore, his opinion is specifically rejected as not sufficiently reliable to qualify as competent evidence on the nature and cause of the injury.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
This the ___ day of December, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER